IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEBRA LYNN BURGESS, )
)
Plaintiff, )
)   No. 3:15-cv-00701
v. )   Senior Judge Haynes
)
SOCIAL SECURITY ADMINISTRATION, )
)
Defendant. )

# MEMORANDUM

Plaintiff, Debra Lynn Burgess, filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) against the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, seeking judicial review of the Defendant's decision denying her applications for disability benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. Plaintiff's applications for disability insurance benefits and supplemental security income cited her obstructive pulmonary disease, degenerative joint disease, degenerative disk disease, arthritis, back pain with an alleged onset date of August 31, 2008. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). After the evidentiary hearing, the ALJ determined Plaintiff was not disabled under the Act. In essence, the ALJ found as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2013, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since August 31, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and *416.971 et seq.*).

3. The claimant has a severe combination of impairments that includes chronic obstructive pulmonary disease and degenerative arthritis (20 CFR 404.1520(c) and 416.920(c).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, including Listings 1.02, 1.04, and 3.02 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 and 416.967, with frequent lifting of up to 10 pounds occasionally and frequently, 3-4 hours of walking/standing during an 8-hour workday, 4-6 hours of sitting during an 8- hour workday, the need to alternate sitting and standing while remaining on task, frequent postural activities, no concentrated exposure to respiratory irritants, and avoidance of exposure to temperature extremes.

* * *

6. The claimant is capable of performing past relevant work as a scheduling clerk. (20 CFR 404.1565 and 416.965).

* * *

7. The claimant has not been under a disability, as defined in the Social Security Act, at any time from August 31, 2008, the alleged onset date of disability, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Docket Entry No. 10, Administrative Record at 16-17, 22). The Appeals Council denied Plaintiff's request for review. Id. at 1-5.

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 21) contending that because her last job was a "composite job," the ALJ erred in finding that Plaintiff could perform her last relevant work. In response (Docket Entry No. 22), the Defendant argues that substantial evidence supports the ALJ's decision that despite her impairments, Plaintiff

can perform her last relevant work.

## A. Review of the Record

For the sole issue in this action, Plaintiff's last job was as a scheduling clerk for Mid Cumberland. As to her former work, a vocational expert ("VE") stated that Plaintiff was a van driver, janitor, kitchen helper and quality control inspector. (Docket Entry No. 10, Administrative Record, at 40). The van driver duties were in addition to duties as a dispatcher, "answering the phones . . . and setting up [] rides and doing the scheduling." Id. at 37-38.

At the evidentiary hearing, Plaintiff described her duties:

Q: And what did you do with Mid Cumberland?

A: I drove a van or one of their big buses, and I also worked in the office doing scheduling and entering reports in the computer.

Q: So out of your average week, how many days would you be driving, either the van or the bus?

A: Five days a week.

Q: And as far as the office work, would you do that also five days a week?

A: Yes. I drove part-time and did the office. I didn't -- no -- I didn't do the office work only the last few months.

Q: So how many months did you do the office work do you think?

A: Maybe six months. Our office work -- our dispatcher quit, and they just had me take over without --

Q: So, did you do dispatching work as well?

A: What they called the dispatching was be [sic] answering the phones from the clients and setting up their rides and doing the scheduling.

Id. at 37-38. In addition, the VE testified as follows about Plaintiff's past work:

3

> Q: Dr. Anchor, do you need any more specifics on any of these jobs?
>
> A: No, I do not, Your Honor.
>
> Q: Okay. Are you prepared to go ahead and classify the past work?
>
> A: Yes. That's according to the electronic file that I reviewed in this matter and Ms. Burgess listed four jobs there that may be vocationally relevant within the past 15 years. They're as follows.
>
> Driver. This was of a van. Medium work exertion, semiskilled. Janitor. Medium exertion, semiskilled. Kitchen helper. Medium, unskilled. And finally inspector. It was a quality control type inspector I believe in a factory setting, and this is light, semiskilled work.
>
> Q: Dr. Anchor, with the testimony we had today about doing for about six months that office work at the van service, would that give rise to any other past work?
>
> A: It was not clear to me from testimony, because it wasn't mentioned in the file either. Was it more clerical or cleaning? I wasn't sure on that.
>
> Q: I think clerical, and correct me if I'm wrong. She said she answered the phones, would set up rides for customers and then like scheduling of I'm assuming where the vans were going, who they were picking up.
>
> CLMT: Yes.
>
> * * *
>
> Q: Does that help, Dr. Anchor?
>
> A: It does. I think that we're looking at a job as a scheduling clerk. It would be sedentary, semiskilled.

Id. at 40-42.

Kenneth Anchor, Ph.D., the vocational expert, classified Plaintiff's past relevant work as that of driver (medium, semi-skilled work), janitor (medium, semi-skilled work), quality control inspector (light, semi-skilled work), and scheduling clerk (sedentary, semi-skilled). Id. at 40, 42.

4

The ALJ's hypothetical question to Anchor included Plaintiff's limitations supported by the record, and described a person of Plaintiff's age, education, and work experience. Id. at 52-53. The hypothetical individual had limitations identical to those included in the RFC. Id. Considering the exertional and non-exertional limitations described by the ALJ, Anchor testified that the hypothetical person could perform Plaintiff's past work as a scheduling clerk. Id. at 53-54. The Anchor testified that his opinion was based on the Dictionary of Occupational Titles ("DOT") and his own experience. Id. at 54.

The ALJ determined that Plaintiff possessed the residual functional capacity ("RFC") to perform light work under 20 C.F.R. §§ 404.1567(b) and 416.967(b).[1] Id. at 17. For an 8-hour workday, the ALJ found that Plaintiff could lift up to 10 pounds occasionally and frequently, walk or stand for 3 to 4 hours, and sit for 4 to 6 hours, with the option to alternate between sitting and standing while remaining on task. Id. Plaintiff could perform frequent postural activities, but could not have concentrated exposure to respiratory irritants and extreme temperature. Id. The ALJ found that Plaintiff's impairments would not preclude her from performing her former work as a scheduling clerk and thus, found Plaintiff was not disabled. Id. at 22-23. Neither the Anchor nor the ALJ listed a specific DOT code for Plaintiff's prior work.

---

[1] As defined by the Act's regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

## B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based upon the entire record in the administrative hearing process. Jones v. Sec'y, Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). Judicial review is limited to a determination of whether substantial evidence exists in the record to support the Commissioner's decision, and whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the ALJ's decision must stand, if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

The sole issue here is whether Plaintiff's prior job was a "hybird" position and thus, a "composite job" under SSR 82-61 that defines a "composite job" as a job with significant elements of two or more occupations. Under SSR 82-61, composite jobs do not have a "counterpart in the DOT" and must be "evaluated according to the particular facts of each individual case" and may require "the services of a vocational specialist or vocational expert." The Commissioner's Program

Operations Manual System ("POMS") "produced for internal use at the Social Security Administration, provides that '[a] composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work as generally performed in the national economy.'" Comeau v. Comm'r of Soc. Sec., No. 15-10650, 2016 WL 1253315, at *9 (E.D.Mich. Mar. 30, 2016) (Morris, M.J.) (citing POMS § DI 25005.020).

In POMS DI 25005.020(B), 2011 WL 4753471, the Commissioner clarified that because composite jobs have no counterpart in the DOT, Agency adjudicators must not evaluate such jobs "at the part of step 4 considering work 'as generally performed in the national economy.'" In other words, an adjudicator can deny a claim at step 4 where the claimant remains capable of performing a composite job "as actually performed," but an ALJ is not permitted to make an adverse step 4 finding that the claimant remains capable of performing a composite job "as generally performed." POMS DI 25005.020(B), 2011 WL 4753471. The POMS also notes that a "composite job" is one that involves "significant elements of two or more occupations." Id. Finally, if "the main duties of PRW" cannot be captured by a single DOT occupation, then the claimant may have performed a composite job. Id.

In another Agency policy clarification, SSR 13-2p, 2013 WL 621536, at *15, the Commissioner stated its policy that "[w]e require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)."

"Composite jobs" are jobs that require the performance of significant elements of two or more jobs, and "have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, *2. "A claimant

is only capable of performing a past relevant composite job if he can perform each of the separate components of the position." Comeau, 2016 WL 1253315, at *9 (citing Hansen v. Comm'r of Soc. Sec., No. 13-13348, 2014 WL 5307133, at *8 (E.D. Mich. Oct. 16, 2014)).

Plaintiff contends that neither Anchor's prehearing analysis nor his testimony considered whether Plaintiff's prior position was a "composite job." In his testimony, Anchor classified Plaintiff's prior position only as a "scheduling clerk." (Docket Entry No. 10, Administrative Record, at 42). Anchor classified the positions only as "scheduling clerk," but expressly relied on the DOT that is contrary to the POM directive to disregard the DOT in determining if a claimant could do the past relevant composite work that is a "composite job." Anchor referred to DOT, but did not provide a DOT code for his classification. The Court concludes that coupled with Plaintiff's testimony, substantial evidence shows that Plaintiff's prior work was a "composite job" and the DOT is inapplicable under the Commissioner's policies.

A remand is warranted in a "composite job" case where Anchor "limited his responses to a discussion of [the claimant's] ability to perform work as a dispatcher, and said nothing of his ability to work as a vehicle inspector." See Comeau, 2016 WL 1253315, at **10-11. Here, Anchor also expressed uncertainly about parts of Plaintiff's prior job.

With the Court's conclusion that the ALJ could not rely on work as "generally performed" to assess Plaintiff's ability to perform her past relevant work," and Anchor's uncertainly about parts of Plaintiff's job, the ALJ's determination for a composite job requires a remand. Armstrong v. Sullivan, 814 F.Supp. 1364, 1372 (W.D. Tex. 1993).

An appropriate Order is filed herewith.

**ENTERED** this the 24th day of September, 2016.

_____
WILLIAM J. HAYNES, JR.
Senior United States District Judge